## CITY OF TULSA v. PEACOCK.

No. 27627.   Dec. 7, 1937.

H. O. Bland, Milton W. Hardy, and E. M. Gallaher, for plaintiff in error.

Henry R. Duncan, for defendant in error.

RILEY, J. This is an appeal from a judgment obtained in the court of common pleas of Tulsa county, by defendant in error, herein referred to as plaintiff, against the city of Tulsa, referred to herein as defendant, for damages alleged to have been caused by the construction of certain drain pipes draining oil, base sediment, asphalt, and other poisonous substances from a street onto and over the surface of plaintiff's premises whereby it was alleged that plaintiff's orchard was destroyed and his land was otherwise permanently injured.

The first contention presented is that the court of common pleas of Tulsa county had no jurisdiction of the cause for the reason that the title to real estate is involved.

Plaintiff in his amended petition alleged that he was the owner of the premises involved and described as "lots two (2), and three (3), block two (2), Home Gardens second addition to the city of Tulsa, Tulsa county, Oklahoma." The specific injury was alleged to be the destruction of plaintiff's orchard on said premises.

Defendant answered by general denial, together with other allegations claimed to be a defense. Therein it was alleged that the "ground upon which plaintiff's orchard was alleged to have existed was a slough and part of the basin of the Arkansas river".

By an amendment to the answer it was alleged: "Defendant for further answer and further defense alleges and states that this plaintiff has no right, title, or interest in said land, or any realty thereto attached, for the reason and by virtue of section 5603, Okla. Stats. 1931, the title to said lands is in the state of Oklahoma."

These allegations of themselves were not sufficient to involve the title to the real estate.

Section 5603, supra, provides:

"The Commissioners of the Land Office are hereby authorized to lease for oil and gas purposes all lands between mean high-water mark in all streams or rivers of two chains or over; all such streams are declared the property of the state of Oklahoma."

It may be observed that the answer does not allege that the land in question or any part thereof is between mean high water in any stream two chains or more in width. It does allege that the land upon which the plaintiff's orchard is alleged to have existed is a slough and a part of the basin of the Arkansas river.

The answer, as amended, then amounts only to an allegation that the land in question is a slough and part of the basin of the Arkansas river, and a conclusion that because it is within the basin of the Arkansas river title thereto is in the state of Oklahoma by virtue of the provisions of section 5603, supra.

The word "basin", when speaking of a large river, ordinarily means or includes the entire area drained by the main stream and its tributaries. Webster's Dict.; Hale v. Sengstacken, 192 Fed. 641.

The answer, as amended, in the absence of an allegation that the land in question was located between the mean high water of the river, did not allege that it was the property of state any more than the land generally lying within the basin of the Arkansas river.

In Hodge v. Mayfield, 98 Okla. 8, 223 P. 853, it is held:

"In an action in the county court for rent for the use and occupancy of plaintiff's premises, where the petition clearly states a cause of action, and defendant answers, denying ownership, and alleging ownership in another, the court will not be ousted of jurisdiction on the ground that title to real estate is involved where there is no substantial evidence in the record showing any conflict in the title."

Under the rule there announced, mere denial of ownership by the plaintiff coupled with allegations of ownership in a third party is not sufficient to oust the county court of jurisdiction. Something further is required. That is, substantial evidence of ownership in such third party.

Conceding, without deciding, the right of the defendant to assert title in a third party in this kind of an action, we find no substantial evidence in this case that the land in question lies between mean high water in the Arkansas river. The substantial evidence is all to the contrary.

"High-water mark" is defined as:

"The line which the water impresses on

the soil as the limit of its dominion. In tide waters, the line on the shore which is reached by the limit of the flux of the usual tide; the line reached by the periodical flow of the tide; the line reached by the tide at its highest flow; the margin of the sea at high tide; the upland boundary of tide and shore lands."

Austin v. Bellingham, 69 Wash. 677, 126 P. 59, quotes with approval the following:

"High-water mark does not mean the height reached by unusual floods; for these usually soon disappear. Neither does it mean the line ordinarily reached by the great annual rises of the river, which cover in places lands that are valuable for agricultural purposes, nor yet does it mean meadow land adjacent to the river, which, when the water leaves it, is adapted to and can be used for grazing or pasturing purposes. The line, then, which fixes the high-water mark is that which separates what properly belongs to the river bed from that which belongs to the riparian owner; that is, the owner of the adjoining land. Soil which is submerged so long or so frequently, in ordinary seasons, that vegetation will not grow on it may be regarded as a part of the bed of the river which overflows it."

Mean high water could not be held to include more.

From all the admissible evidence in this case, it clearly appears that no part of plaintiff's land for which he claimed damages was within or between the mean high water of the Arkansas river. Crops were shown to have been grown upon it for more than ten years. Only twice during that period was it overflowed by the Arkansas river. The well-defined bank of the river between plaintiff's land and the ordinary channel of the river was shown to be above six feet high. Only extraordinary floods overflowed the land. There was neither plea nor substantial evidence showing conflict of title. Therefore, the court of common pleas had jurisdiction. Hodge v. Mayfield, supra.

It is next contended that the judgment is void because entered upon a new cause of action filed without process after issues were joined.

After defendant's answer and plaintiff's reply were filed, plaintiff obtained leave of court and filed an amendment to his petition wherein he alleged that his orchard was killed "and plaintiff's land was damaged in the approximate sum of $800." His original claim was for $300 for damages for the destruction of his orchard.

The contention is that by the amendment plaintiff introduced a new cause of action, viz., damage to land, and that this amounted to a new lawsuit. This contention is without merit. The original petition was for damages to real property. The fruit trees were a part of the realty. The amendment merely added additional damages; that is, to the land or soil itself.

Defendant cites section 248, O. S. 1931, which allows plaintiff to amend his petition at any time before answer is filed. This section confers the right to amend without leave of court. Section 251 gives the court power to allow amendment before or after judgment.

Under said section an amendment increasing the amount of damages may be permitted. Oklahoma City v. Welsh, 3 Okla. 288, 295, 41 P. 598.

It is said that the amendment was made without notice to defendant. But the defendant did not object to going on with the trial because it had no notice of the amendment. Had the defendant made any showing that it was prejudiced by the amendment to the extent that it was not prepared to meet the amended claim, there would be merit in its contention because of lack of service of notice. But no such objection was made. The objection was to the alleged change of cause of action and increase of the amount of damages. Defendant shows no prejudice or injury because of lack of notice. The amendment was otherwise properly allowed.

Finally it is contended that the court erred in overruling defendant's demurrer to plaintiff's evidence.

There is ample evidence to support the verdict and judgment.

Judgment is affirmed.

OSBORN, C. J., and WELCH, PHELPS, GIBSON, and HURST, JJ., concur.